**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

---

**Marquita Valdez,**

       Plaintiff,

**v.**

**Academy Bank, N.A.,**
a National Bank,

       Defendant.

---

**COMPLAINT**

---

COMES NOW Plaintiff, Marquita Valdez, and for her Complaint against the Defendant, alleges the following:

### Introduction

1. This is a proceeding for equitable relief and damages to redress violations of the Americans with Disabilities Act, the Family and Medical Leave Act, and the Colorado common law for outrageous conduct.

### Jurisdiction

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

### Venue

3. The unlawful employment actions described below were committed in the state of Colorado.

1

4. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

## Exhaustion of Administrative Remedies

5. On July 8, 2016 Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission in Denver, Colorado alleging disability discrimination in violation of the ADA.

6. On or about April 14, 2017, the Equal Employment Opportunity Commission mailed a Notice of Right to Sue to the Plaintiff.

7. Plaintiff received the Notice of Right to Sue on or about April 17, 2017.

8. Plaintiff commenced this action within 90 days of Plaintiff's receipt of that letter.

## Parties

9. Defendant is a national bank chartered by the United States under the National Banking Act.

10. Defendant is headquartered in Colorado Springs, Colorado.

11. Defendant provides banking services through several branches located in Colorado and other states.

12. Defendant's branches are primarily located in Wal-Mart stores.

13. Defendant refers to these branches as "in store" branches.

14. Defendant employed more than fifty employees for at least twenty calendar weeks in 2015 and 2016.

15. Defendant is a covered employer under the FMLA.

16. Defendant is an employer within the meaning of the ADA.

17. Plaintiff is a natural person residing in Pueblo, Colorado.

## General Allegations

18. All previous allegations are incorporated herein.

19. Plaintiff is a former employee of Defendant.

20. Plaintiff began her employment with Defendant on January 20, 2015.

21. Plaintiff first worked as a Personal Banker I in the Pueblo South in store location in Pueblo, Colorado.

22. Plaintiff then attended teller training.

23. Plaintiff exhibited proficiency in all areas of her teller training.

24. Defendant then promoted Plaintiff to a Head Teller/Supervisor position at the Pueblo South location.

25. On December 15, 2015, Defendant transferred Plaintiff to the Pueblo West location, a Wal-Mart in-store branch.

26. Defendant also promoted Plaintiff to an Assistant Banking Center Manager ("ABCM") position at that time.

27. In her ABCM position Plaintiff supervised five Personal Bankers.

28. Plaintiff worked under the direct supervision of Ms. Candace Morgan, the Banking Center Manager ("BCM").

29. Ms. Morgan engaged in a humiliating and abusive managerial style towards Plaintiff and other Academy Bank employees.

30. As a result of Ms. Morgan's conduct Plaintiff began to suffer from severe anxiety and depression with clear physical manifestations.

31. For example, from mid-December, 2015 through late March, 2016 Plaintiff lost thirty seven pounds and repeatedly vomited from work induced stress.

32. Plaintiff raised these issues with Defendant's Human Resources in March, 2016.

33. Defendant investigated Ms. Morgan's conduct from March 21 through March 25, 2016.

34. Defendant found that Ms. Morgan acted unprofessionally in the manner in which she managed the branch.

35. Unfortunately, Plaintiff's complaint to Human Resources did not result in any change to Ms. Morgan's conduct.

36. Defendant placed Plaintiff on paid leave from March 21 through March 25, 2016 while it investigated her complaint.

37. Plaintiff took off Monday, March 28, 2016 as paid leave.

38. Plaintiff took Tuesday, March 29, 2016 as a personal day.

39. Plaintiff missed her scheduled shift on Wednesday, March 30, 2016.

40. Defendant disciplined Plaintiff for missing her shift on Wednesday, March 30, 2016.

41. Defendant's stated reason for disciplining Plaintiff for her absence on March 30, 2016 was a violation of Defendant's attendance policies and procedures.

42. Plaintiff did not state any medical condition as a reason for her absences.

43. Plaintiff did not request medical leave for her absences.

44. Plaintiff did not request FMLA leave to cover her absences in March, 2016.

45. Defendant provided Plaintiff with an FMLA Notice of Eligibility on March 31, 2016.

4

46. The March 31, 2016 FMLA notice stated that Plaintiff was eligible for FMLA leave.

47. The March 31, 2016 FMLA notice did not state 1) that Plaintiff had not met the FMLA's 12 month requirement; 2) that Plaintiff had not met the FMLA's hours of service requirement; and 3) that Plaintiff did not work within 75 miles of fifty or more employees.

48. Plaintiff did not elect to pursue FMLA leave for the March, 2016 absences.

49. Defendant did not designate Plaintiff's absences from March, 2016 as FMLA qualifying absences.

50. On April 1, 2016 Plaintiff began to seek treatment from Catherine Iliff, a Licensed Professional Counselor.

51. Ms. Iliff diagnosed Plaintiff with Major Depressive Disorder, Panic Disorder, and PTSD.

52. Plaintiff also began to seek medical treatment from Pueblo Community Health Center in April, 2016.

53. Pueblo Community Health Center prescribed Plaintiff with Buspirone for her anxiety.

54. On April 11, 2016 Plaintiff presented Defendant with a note from Pueblo Community Health Center.

55. The April 11, 2016 requested that Defendant grant Plaintiff leave from work for April 11 and 12, 2016.

56. This was the first time Plaintiff requested medical leave from Defendant related to her anxiety and depression.

57.	Plaintiff sought to take medical leave on April 16, 2016.

58.	On April 16, 2016 Ms. Valdez provided Academy Bank with a letter from Ms. Iliff stating that, "Marquita is suffering from extreme anxiety and panic which is currently being exacerbated by her work environment."

59.	This was the first time Plaintiff provided Defendant with a medical diagnosis of a health condition affecting her ability to perform her job.

60.	At the same time Ms. Iliff recommended that Ms. Valdez take medical leave by stating that, "It is my recommendation that she stay home and rest, and be able to utilize the skills she is learning to manage the panic and anxiety."

61.	Plaintiff requested a week off from work on April 16, 2016.

62.	Plaintiff's medical conditions resulted in an incapacity that required an absence of more than three days from work.

63.	Plaintiff was eligible for FMLA leave on April 16, 2016.

64.	Plaintiff had worked for Defendant for more than twelve months.

65.	Plaintiff had worked at least 1,250 hours during the twelve months prior to the start of her requested FMLA leave.

66.	Plaintiff worked at a location where at least fifty employees are employed within seventy-five miles of the location.

67.	On April 18, 2016 Defendant provided Plaintiff with the same Form WH-381 Notice of Eligibility and Rights and Responsibilities that it sent on March 31, 2016.

68.	Defendant did not provide Plaintiff a new Notice of Eligibility and Rights and Responsibilities in response to her April 16, 2016 request for medical leave.

6

69. Defendant gave Plaintiff until April 25, 2016 to complete her FMLA certification.

70. On April 25, 2016 Plaintiff provided Defendant with a letter from Ms. Iliff.

71. Ms. Iliff's letter stated that, "Marquita has begun recovering from extreme anxiety and panic which was being exacerbated by her work environment."

72. Ms. Iliff's letter further states that, "It is my recommendation that she stay home and continue to rest.  She has begun to utilize the skills she has learned to manage the panic and anxiety, but is not yet ready to face the stressors that trigger the panic."

73. On April 29, 2016 Plaintiff completed a "Request for Family or Medical Leave" and returned it to Defendant.

74. That request sought medical leave beginning on May 2, 2016.

75. That request stated an anticipated return to work date of August 1, 2016.

76. On April 29, 2016 Plaintiff spoke with Defendant's Human Resources and was told that if she did not return her FMLA paperwork by May 2, 2016 that she would be "subject to termination."

77. On April 30, 2016 Plaintiff began to suffer from a serious medical condition in both lungs.

78. On May 1, 2016 Plaintiff was admitted to Parkview Medical Center in Pueblo, Colorado.

79. At that time Plaintiff was suffering from a serious medical condition, which was later diagnosed as a pulmonary embolism in both lungs.

80. Pulmonary embolism is a blockage in one of the pulmonary arteries in the lungs and is a serious, life threatening condition.

81. Plaintiff was admitted to Parkview on May 1, 2016 and remained in the hospital through May 5, 2016.

82. Plaintiff was bedridden during her stay in the hospital.

83. On May 1, 2016 Plaintiff called Defendant and informed them that she had been hospitalized.

84. On May 2, 2016 Plaintiff called Defendant's Human Resources and left a message regarding her hospitalization.

85. On May 3, 2016 Plaintiff spoke with Teresa Ascencio, Director of Human Resources, on the phone.

86. Plaintiff informed Ms. Ascencio that she was in the hospital with blood clots in both lungs.

87. Plaintiff informed Ms. Ascencio that she was unable to work.

88. Plaintiff informed Ms. Ascencio that she did not know how long she would be hospitalized.

89. Plaintiff informed Ms. Ascencio that she was in a lot of pain.

90. Plaintiff informed Ms. Ascencio that her medical condition was serious and that "people die from this."

91. During this phone call Ms. Ascencio threatened to terminate Plaintiff's employment because she had not yet returned the FMLA paperwork.

92. Ms. Ascencio knew of Plaintiff's medical conditions at the time she threatened to terminate Plaintiff's employment on May 3, 2016.

93. Ms. Ascencio's threat to terminate Plaintiff's employment while she was in the

8

hospital caused significant emotional distress to Plaintiff.

94. Plaintiff responded to Ms. Ascencio that, "I'm literally fighting for my life and you're calling threatening to fire me."

95. Following the phone call with Ms. Ascencio Plaintiff's medical providers gave her anxiety medication through her IV in order to treat the stress caused by Ms. Ascencio's threat to terminate Plaintiff's employment.

96. On May 5, 2016 Ms. Cherie Millirons, PA-C of Pueblo Community Health Center completed Short Term Disability ("STD") paperwork for Plaintiff.

97. The STD paperwork listed "Major Depressive Disorder" as Plaintiff's primary diagnosis.

98. The STD paperwork also listed "Anxiety" as a secondary diagnosis.

99. The STD paperwork stated that Plaintiff's diagnoses were "work related."

100. The STD paperwork stated that Plaintiff was advised to stop working.

101. The STD paperwork listed Plaintiff's current work stress as "8-9" out of "10."

102. The STD paperwork stated that Plaintiff "has strong panic attacks 2-3 times per day and anxiety and crying on a daily basis."

103. Plaintiff's STD paperwork listed April 1, 2016 as the first date Plaintiff sought treatment for these medical conditions.

104. Plaintiff's STD paperwork also stated Plaintiff had been hospitalized for pulmonary embolisms.

105. Plaintiff's STD paperwork stated that Plaintiff had been advised not to return to work "due to high stress at work."

106. On May 5, 2016 Defendant issued Plaintiff a second set of FMLA paperwork to complete based upon her pulmonary embolisms.

107. On that same date Plaintiff completed: 1) an FMLA Certification documenting a need for FMLA leave based upon her anxiety, depression, and pulmonary embolism; 2) a note from Pueblo Community Health Center explaining that Ms. Valdez could not medically return to work at that time due to the medical conditions stated in her FMLA paperwork; and 3) Reasonable Accommodation paperwork provided by Academy Bank documenting anxiety, depression, panic, and pulmonary embolism.

108. On May 6, 2016 Plaintiff completed a medical release in favor of Defendant.

109. Plaintiff faxed the completed FMLA and ADA paperwork to Defendant on the morning of May 6, 2016.

110. On May 6, 2016 Defendant terminated Plaintiff's employment.

111. Defendant mailed a termination letter to Plaintiff on May 6, 2016.

112. Ms. Ascencio signed the May 6, 2016 termination letter.

113. Defendant's May 6, 2016 termination letter stated that Defendant was terminating Plaintiff's employment for excessive absences.

114. The absences that Defendant relied upon to terminate Plaintiff's employment all occurred after April 16, 2016.

115. The letter states that Defendant provided Plaintiff with FMLA paperwork on March 31, 2016 with a return deadline of April 15, 2016.

116. The letter also states that Defendant provided Plaintiff with "two separate week-long extensions to allow you to return the required documentation by Monday, May 2,

2016."

117. The termination letter states, in part, that, "While you notified the Company of a potential serious health condition that may have allowed Family Medical Leave Act ("FMLA") leave, as of the writing of this letter, we have not received any paperwork back from you to allow for FMLA coverage for the absences noted above."

118. The termination letter also states that, "You did not return any portion of the required FMLA documentation within the required deadline of May 2 or by yourself imposed deadline of May 5."

119. The letter also notes that Plaintiff informed Defendant of "clots on your lungs" that required hospitalization.

120. The letter notes that Defendant knew of this condition no later than May 2, 2016.

121. The letter also states that Defendant provided Plaintiff FMLA paperwork related to her pulmonary embolisms on May 5, 2016.

122. The letter stated that Plaintiff disregard the May 5, 2016 FMLA paperwork "given the termination of your employment."

### First Cause of Action (ADA - Disability Discrimination)

123. Plaintiff realleges all prior paragraphs and incorporates them herein.

124. Plaintiff was an employee of Defendant's within the meaning of the ADA.

125. Defendant was an employer under the ADA as it had more than fifteen employees during the course of Plaintiff's employment.

126. Plaintiff had physical and mental impairments that substantially limited her in major life activities during the course of her employment with Defendant.

127. Plaintiff suffered from Major Depressive Disorder, Panic Disorder, and PTSD (the "Mental Conditions").

128. The Mental Conditions are mental impairments.

129. The Mental Conditions substantially limited Plaintiff in the major life activities of concentrating, thinking, eating, interacting with others, sleeping, and the operation of her brain and neurological systems.

130. Plaintiff also suffered from pulmonary embolisms in both longs (the "Physical Condition").

131. The Physical Condition is a physical impairment.

132. The Physical Condition limited Plaintiff in the major life activities of breathing and the operation of her respiratory, circulatory, and cardiovascular systems.

133. Plaintiff had a record of both physical and mental impairments.

134. Defendant terminated Plaintiff's employment.

135. Defendant knew of the Mental Conditions prior to terminating Plaintiff's employment.

136. Defendant knew of the Physical Condition prior to terminating Plaintiff's employment.

137. Plaintiff requested a reasonable accommodation when she requested medical leave.

138. Defendant did not engage in the interactive process on Plaintiff's request for medical leave.

139. Defendant failed to provide Plaintiff's requested accommodation by terminating

Plaintiff's employment prior to the expiration of her need for medical leave.

140. Defendant terminated Plaintiff's employment because of her request for medical leave.

141. Defendant's decision to terminate Plaintiff's employment was caused by Plaintiff's disability.

142. Defendant's acts and omissions violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12112.

### Second Cause of Action (FMLA Interference – Mental Conditions)

143. Plaintiff realleges all prior paragraphs and incorporates them herein.

144. Plaintiff was eligible for FMLA leave in April, 2016.

145. The Mental Conditions were serious health conditions.

146. Plaintiff requested medical leave for the Mental Conditions on April 16, 2016.

147. Defendant requested a certification from a health care provider on April 18, 2016.

148. Defendant initially gave Plaintiff until April 22, 2016 to return her FMLA certification paperwork.

149. Defendant provided a "one week extension" until April 29, 2016 for Plaintiff to return her FMLA certification paperwork.

150. Defendant then set a "final deadline" of May 2, 2016 for Plaintiff to return her FMLA paperwork.

151. Plaintiff was in the hospital due to the Physical Condition on May 2, 2016.

152. Defendant knew Plaintiff was in the hospital on May 2, 2016.

153. Plaintiff returned her FMLA certification paperwork to Defendant on May 6, 2016

after she was released from the hospital.

154. Plaintiff terminated Plaintiff's employment on May 6, 2016.

155. Defendant's stated reason for the termination of Plaintiff's employment was her failure to return her FMLA paperwork for the Mental Conditions by May 2, 2016.

156. Defendant's acts and omissions violated Plaintiff's rights under the FMLA.

### Third Cause of Action (FMLA Interference – Physical Condition)

157. Plaintiff realleges all prior paragraphs and incorporates them herein.

158. Plaintiff was eligible for FMLA leave in April and May, 2016.

159. The Physical Condition was a serious health condition.

160. Plaintiff was hospitalized for the Physical Condition from April 29, 2016 through May 5, 2016.

161. Plaintiff informed Defendant of the Physical Condition and her hospitalization on approximately May 2, 2016.

162. Defendant provided Plaintiff with FMLA paperwork for the Physical Condition on May 5, 2016.

163. Plaintiff terminated Plaintiff's employment on May 6, 2016.

164. Defendant's stated reason for the termination of Plaintiff's employment was her failure to return her FMLA paperwork for the Mental Conditions by May 2, 2016.

165. Defendant's acts and omissions violated Plaintiff's rights under the FMLA.

### Fourth Cause of Action - Outrageous Conduct

166. Plaintiff realleges all prior paragraphs and incorporates them herein.

167. Defendant's management engaged in a humiliating and abusive managerial style

towards Plaintiff.

168. As a result of Defendant's humiliating and abusive managerial style Plaintiff began to suffer from depression and anxiety.

169. Plaintiff informed Defendant of this fact in March, 2016 and again in April, 2016.

170. Plaintiff informed Defendant that her depression and anxiety were being exacerbated by her work environment.

171. Plaintiff requested medical leave from Defendant for her depression and anxiety.

172. On April 25, 2016 Plaintiff again provided documentation to Defendant stating that she was suffering from depression and anxiety that was exacerbated by her work environment.

173. Defendant knew that Plaintiff was suffering from depression and anxiety.

174. Defendant knew that Plaintiff's depression and anxiety were exacerbated by stressors in her work environment.

175. On April 30, 2016 Plaintiff began to suffer from a pulmonary embolism in both lungs.

176. Pulmonary embolism is a potentially life threatening medical condition.

177. Plaintiff was admitted to the hospital for her pulmonary embolisms on May 1, 2016.

178. Plaintiff informed Defendant of her pulmonary embolism on May 2, 2016.

179. Plaintiff informed Defendant of her hospitalization on May 2, 2016.

180. On May 3, 2016 Plaintiff spoke with Defendant's Human Resources representative, Ms. Teresa Ascencio.

181. On May 3, 2016 Ms. Ascencio was fully aware of Plaintiff's anxiety and depression as well as her pulmonary embolism and resulting hospitalization.

182. Plaintiff informed Ms. Ascencio that the pulmonary embolism was a potentially life threatening medical condition.

183. While Plaintiff was hospitalized on May 3, 2016 with a potentially life threatening medical condition Defendant threatened to terminate Plaintiff's employment.

184. Defendant's threat to terminate Plaintiff's employment seriously exacerbated Plaintiff's anxiety and depression.

185. Defendant terminated Plaintiff's employment on May 6, 2016.

186. Defendant engaged in outrageous conduct by threatening to terminate Plaintiff's employment when it knew Plaintiff suffered from anxiety and depression related to work and was hospitalized with a life threatening medical condition.

187. Defendant engaged in outrageous conduct by terminating Plaintiff's employment when it knew Plaintiff suffered from anxiety and depression related to work and was hospitalized with a life threatening medical condition the day before the termination.

188. Defendant engaged in this conduct recklessly and with the intent to cause Plaintiff severe emotional distress.

189. Plaintiff suffered severe emotional distress as a result of Defendant's outrageous conduct.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for the following relief:

a. Nominal damages;

b. Back pay, including loss of benefits and seniority, or front pay in lieu of reinstatement;

c. Liquidated damages;

d. Nonpecuniary and compensatory damages, including damages for emotional distress and consequential damages;

e. Punitive damages;

f. Pre- and post-judgment interest at the highest rate allowed by law;

g. Costs and reasonable attorneys fees; and

h. All other legal or equitable relief to which Plaintiff is entitled.

### Jury Demand

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted this 12th day of July, 2017.

                        CORNISH & DELL'OLIO, P.C.

                        s/Bradley J. Sherman
                        Bradley J. Sherman, # 39452
                        Cornish & Dell'Olio, P.C.
                        431 N. Cascade Ave. Suite 1
                        Colorado Springs, CO 80903
                        719-475-1204
                        719-475-1264 (fax)
                        bsherman@cornishanddellolio.com
                        Attorney for Plaintiff

Plaintiff's Address:
P.O. Box 3645
Pueblo, CO 81005-0645